AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

*FILED*
*At Albuquerque NM*

*OCT 27 2011*

*MATTHEW J. DYKMAN*
*CLERK*

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| The proceeds, contents and any U.S. currency, | )    Case No.   11-MR-746 |
| contained in Bank of America account number | ) |
| 004272083181 | ) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____ New Mexico _____ is subject to forfeiture to the United States of America under ___18___ U.S.C. § 981 and 2428 *(describe the property):*

The proceeds, contents and any United States currency contained in Bank of America account number 004272083181, held in the name of Michael Lee and JianPing Zhu

The application is based on these facts:
Based on the facts set forth herein, I believe there is probable cause to seize the contents of the account listed on this application. The contents of the account are proceeds of illegal activity in violation of 18 U.S.C. § 2422, 8 U.S.C. § 1328; and therefore constitute property traceable to the violation and subject to seizure pursuant to forfeiture under 18 U.S.C. § 982, Title 21 U.S.C. § 853, 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. 2461 and/or 18 U.S.C. 2428

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Michael Harman, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _Oct 27, 2011_

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

United States Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF APPLICATION FOR
SEIZURE WARRANT

1.      I, Special Agent Michael Harman, am currently employed with Homeland Security

Investigations (HSI), Office of the Assistant Special Agent in Charge (ASAC), Albuquerque, New

Mexico. I have been employed with HSI since February of 2010. Prior to being employed with the

Department of Homeland Security, I was a Special Agent with the Criminal Investigations Division

of the Internal Revenue Service (IRS-CID) from May of 2005 until February of 2010. I am

classified, trained, and employed as a federal law enforcement officer with statutory arrest authority

charged with conducting criminal investigations of alleged violations of federal criminal statutes.

2.      Through my training and experience, I have become familiar with financial investigations. I

completed the Criminal Investigator Training Program (CITP) and the DHS Special Agent Training

(ISAT) in addition to the IRSCID Special Agent Basic Training at the Federal Law Enforcement

Training Center (FLETC) in Glynco, Georgia. During these programs I received instruction in

Constitutional and statutory laws and all phases of basic criminal investigations to include the

execution of Search and Seizure Warrants, at the Federal Law Enforcement Officer level. I also

attended an Asset Forfeiture and Financial Investigations training and several supplemental trainings

in the area of financial asset forfeiture investigations. As part of my duties as a Special Agent with

HSI, I conduct financial investigations to include violations of Title 18, United States Code (USC),

Section 1956, Laundering of Monetary Instruments.

3.      Based on my training and experience regarding financial investigations, I am aware

that persons involved in illegal activity to include but not limited to violations of Title 18, U.S.C.,

§1956, Money Laundering, will conceal, disguise, harbor and attempt to legitimize the deposits of

their illicit proceeds. The concealment of such can include a safe deposit box, a residential safe, or

deposit the illicit proceeds into a personal or business account and attempt to show the funds were legitimately obtained.

4.    In making this affidavit, I am relying in part on information received from the Rio Rancho Police Department (RRPD), the Albuquerque, New Mexico Police Department (APD) and Special Agents from the Department of Homeland Security Investigations (HSI) Special Agents.

5.    Your Affiant makes this affidavit in support of a warrant to seize the proceeds and contents from the following bank account (s) owned and utilized by MICHAEL LEE, aka BUSHI LEE and JENNIFER LEE, aka JIAN PING ZHU.

6.    Your Affiant believes that the Lee's are utilizing the below listed accounts to conceal, transfer, and disguise illicit proceeds gained from their businesses, BEST CHINESE MASSAGE, which are located in Albuquerque (Bernalillo County) and Rio Rancho (Sandoval County), New Mexico:

   a.   Bank of America, personal checking, account 004272083181, in the names of MICHAEL and JENNIFER LEE, 7505 Treviso Ct, NE, Albuquerque, New Mexico 87113-2379.

   b.   Bank of America, business checking account 439003274352, in the name of BEST CHINESE MASSAGE, LLC, 1510 Wyoming Blvd, NE, Suite A, Albuquerque, New Mexico 87112.

7.    Your Affiant has been conducting a joint investigation with the APD and RRPD involving the illegal activity (prostitution) at massage parlors known as Best Chinese Massage (BCM), located in Albuquerque and Rio Rancho. The investigation thus far has revealed indications of harboring Chinese nationals for the purpose of engaging in prostitution for profit.

8.   Your Affiant has probable cause to believe these acts are in violation of;

   a.   Title 18 U.S.C. § 2422; Coercion and Enticement;  which states: "(a) Whoever

   knowingly persuades, induces, entices, or coerces any individual to travel in interstate or

   foreign commerce, or in any Territory or Possession of the United States, to engage in

   prostitution, or in any sexual activity for which any person can be charged with a criminal

   offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20

   years, or both" and;

   b.   Title 8 U.S.C. § 1328, Importation of alien for immoral purpose states:

   "The importation into the United States of any alien for the purpose of prostitution, or for any

   other immoral purpose, is forbidden. Whoever shall, directly or indirectly, import, or attempt

   to import into the United States any alien for the purpose of prostitution or for any other

   immoral purpose, or shall hold or attempt to hold any alien for any such purpose in pursuance

   of such illegal importation, or shall keep, maintain, control, support, employ, or harbor in any

   house or other place, for the purpose of prostitution or for any other immoral purpose, any

   alien, in pursuance of such illegal importation, shall be fined under title 18, or imprisoned not

   more than 10 years, or both. The trial and punishment of offenses under this section may be in

   any district to or into which such alien is brought in pursuance of importation by the person or

   persons accused, or in any district in which a violation of any of the provisions of this section

   occurs. In all prosecutions under this section, the testimony of a husband or wife shall be

   admissible and competent evidence against each other."

Through training and experience, your Affiant has also learned that persons involved in illegal

activities including money laundering commonly store their bulk cash proceeds either at their primary

residence or in a safe deposit box. Your Affiant is also aware that persons involved in illegal activity will

often deposit proceeds from the illegal activity into multiple accounts, personal and business, in an

attempt to disguise the money as legitimate income. Transferring of funds between accounts is also a common method to avoid detection of these assets by government agencies.

9.   Your Affiant is aware that persons involved in money laundering will attempt to legitimize the profits from illegal transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts).

## FACTS IN SUPPORT OF THE APPLICATION

10.   On or about June 28, 2011, the RRPD received information from a source, who wished to remain anonymous, that the source suspected prostitution was occurring at BEST CHINESE MASSAGE (BCM), located at 2502 Southern Boulevard, Suite C, Rio Rancho, New Mexico.  The source stated that they visited the business on or about June 28, 2011, for a massage.  The source described the person who gave the source the massage as a slender, Asian female between the ages of 40 and 45.  After their massage, the source stated that the slender female asked if the source wanted an "oral massage."  The source declined and left the premises.

11.   Based on this information, the RRPD, with assistance from the APD Vice Unit, initiated an investigation.  Prostitution is illegal pursuant to State of New Mexico statute NMSA 30-9-4.

12.   Law enforcement officers conducted surveillance at BEST CHINESE MASSAGE at 2502 Southern Boulevard, Suite C, Rio Rancho, New Mexico, during the week of October 11th – 14th, 2011, with the following observations:

13.   On October 11, 2011, at about 2122 hours, a beige Lexus, bearing New Mexico registration HKX879, registered to XING LI, arrived at the business. Database records indicate the New Mexico license plate HKX879 is registered to a 2000 Lexus, in the name of XING LI, 2606 Avenida Castellan SE, in Rio Rancho, New Mexico. An Asian male retrieved two plastic bags from the trunk of the vehicle and took them inside the business. The same Asian male exited the business then departed in his vehicle. At about 2223 hours, the interior lights at BEST CHINESE MASSAGE were turned off from inside the business indicating a person or person(s) were still inside. During surveillance, law enforcement did not see anyone exit the business, either by the front or rear doors.  The surveillance was terminated at 2300 hours. NOTE: This vehicle would later be seen at the same location and was occupied by two Asian males, one of whom was observed locking the door at the close of business. The male who entered the vehicle on the passenger side at the time of departure was carrying a briefcase (see below).

14.   On October 12, 2011, at about 1450 hours, an Asian female driving a 2011 Mercedes Benz, bearing New Mexico registration LYY888, departed BEST CHINESE MASSAGE on Southern in Rio Rancho. Database records revealed the vehicle is registered to MICHAEL and JENNIFER LEE, 7505 Treviso Court NE, Albuquerque, New Mexico.  Officer Brown followed the vehicle to 3296 Coors Boulevard, Albuquerque, New Mexico, and the unidentified female was observed entering an establishment, also called BEST CHINESE MASSAGE.

15.   Database queries and a check for business licenses revealed that MICHAEL LEE is listed as the license owner for the following properties:

a. Business registration records indicate that BEST CHINESE MASSAGE located at 3296 Coors Boulevard NE, Suite L, is owned by MICHAEL LEE, 7505 Treviso Circle NE, Albuquerque, New Mexico.   Property records indicate the correct address for MICHAEL LEE is 7505 Treviso Court NE, Albuquerque, New Mexico.

5

b. Business registration records indicate that BEST CHINESE MASSAGE, 1510 Wyoming Boulevard NE, Albuquerque, New Mexico, is owned by MICHAEL LEE, 7505 Treviso Circle NE, Albuquerque, New Mexico.

c. Business registration records indicate that BEST CHINESE MASSAGE, 2502 Southern Boulevard, Suite C, Rio Rancho, New Mexico, is owned by MICHAEL LEE, 7505 Treviso Circle NE, Albuquerque, New Mexico.

Hereafter, for purposes of this affidavit, each location will be identified as BEST CHINESE MASSAGE (BCM)/Coors, BEST CHINESE MASSAGE (BCM)/Wyoming and BEST CHINESE MASSAGE (BCM)/Rio Rancho.

16.    On October 12, 2011, at about 2208 hours, a beige Lexus, bearing New Mexico registration HKX879, arrived at the BCM/Rio Rancho and two males exited the vehicle and went inside the business. HKX879 is registered to XING LI.  At about 2215 hours, law enforcement observed the two males exit the business.  The Asian male who got into the passenger side of the vehicle was observed with a briefcase in his hand.  One of the men appeared to lock the door of the business from the outside and departed the area in the vehicle.  Because officers conducting the surveillance observed one of the male subjects appear to lock the door and carry out a briefcase, your Affiant believes this briefcase possibly contained proceeds from the business due to the results of a subsequent search warrant executed at the residence of MICHAEL and JENNIFER LEE. The discovery of large amounts of cash at the residence will be discussed in this affidavit. Sometime thereafter, two Asian females exited the business and departed in an Infiniti, bearing New Mexico registration FHN387, with an unidentified male.  FHN387 is registered to Gregory Voida, 39 Tierra Madre Road, Placitas, New Mexico.  Law enforcement observed the male and the two (2) Asian females travel to the Sandia Casino and observed them gambling. This does not appear to be consistent with normal licensed massage practices.

17.    On October 13, 2011, at about 2140 hours, a beige Lexus, bearing New Mexico registration HKX879, registered to XING LI, arrived at the BCM/Rio Rancho.  An Asian male exited the vehicle on the passenger side, proceeded to the trunk area and once again retrieved two plastic bags, taking the plastic bags into the BCM/Rio Rancho.  The same male exited the business and left in his vehicle.  Law enforcement did not observe anyone else leave the business via either the front or the back doors; but, they noted that the lights were turned off after the Asian male left, leading them to believe that someone was left inside of the business and that individual(s) turned off the lights from the inside.  Because this vehicle was previously observed transporting another male subject who then left with a briefcase, your Affiant believes there is relevance to the behavior because a typical massage client would not retrieve items from a trunk and then carry them inside. Your Affiant believes that one or both of these males has some control over the business based on surveillance activities.


18.    On October 14, 2011, at about 1340 hours, an individual identified by law enforcement as Michael LEE, (based on a driver's license photograph), arrived in a white Toyota SUV, bearing New Mexico registration LFC888, and parked in front of BCM/Rio Rancho.  RRPD Officer Maestas followed this vehicle to a residence located at 7505 Treviso Court NE, Albuquerque, whereupon LEE was observed parking his vehicle inside the garage at that residence.  Database checks revealed the vehicle is registered to MICHAEL and JENNIFER LEE, 7505 Treviso Court NE, Albuquerque, New Mexico. Bernalillo County, New Mexico property records indicate that 7505 Treviso Court NE, Albuquerque, New Mexico, is owned by BUSHI LEE and ZHU JIANPING.


19.    Immigration record checks indicate MICHAEL LEE is also known as Bushi Li, date of birth March 11, 1965, and was assigned Alien/Administrative number 047 459 336.  Immigration records indicate that MICHAEL LEE was born in China and became a naturalized United States citizen on or about November 18, 2005.  Other database queries indicate BUSHI LEE and BUSH LEE are alias names

7

for MICHAEL LEE.

20.     Immigration records indicate JENNIFER PING LEE, also known as JIAN ZHU and JIANPING

ZHU, date of birth October 1, 1965, was assigned Alien/Administrative number 047 549 337.

Immigration records indicate that JENNIFER LEE was born in China and became a naturalized United

States citizen on or about August 15, 2008.

21.     During the week of October 17-20, 2011, the APD Vice Unit assisted in the investigation with the

following results:

22.   On October 17, 2011, APD conducted an undercover operation at the BEST CHINESE

MASSAGE /Coors location. APD Detective Fox, in an undercover capacity, went in to the massage

parlor and made contact with a female who introduced herself as "Lucy". Detective Fox advised Lucy

that he wanted a thirty minute massage.  Detective Fox described the female as being approximately

thirty-five to forty years of age.  The female directed him to a room and asked him to take off his

clothing.  Detective Fox removed his shirt and pants and sat on the table.  Lucy then began to massage

Detective Fox's back.  Detective Fox had some additional conversation with Lucy and eventually asked

her for a "Massagee," which, according to vice officers based on their training and experience, is a

common term used to describe masturbation.  Detective Fox also moved his hand up and down to

demonstrate the motion of masturbation.  Lucy smiled and said, "Yes, you handsome, fifteen extra."  He

then asked her, in order to confirm that she was referring to U.S. Currency, "Fifteen extra dollars?"  Lucy

said "Yes, thank you."  Detective Fox then gave the predetermined signal and received a phone call from

his team.  He then left the establishment.

23.     On October 17, 2011, APD conducted an undercover operation at the BEST CHINESE

MASSAGE /Wyoming location.  APD Detective Fox, in an undercover capacity, went in to the massage

parlor and had contact with a female who introduced herself as "Cici". Detective Fox advised Cici that

he wanted a thirty minute massage. Detective Fox described the female as being approximately thirty

years old. Cici showed Detective Fox to the nearest room and told him to undress and lay on the table.

Detective Fox took off his shirt and pants, leaving his underwear on. Cici then returned to the room and

began the massage. After several minutes Detective Fox started conversation with Cici and asked her if

she was the only one working since she had left to answer the phone and talk to a patron who came into

the business. Cici confirmed she was the only employee at the time. Cici continued the massage and

Detective Fox eventually asked her if he could have a "Massagee." He also moved his hand up and down

to demonstrate the motion of masturbation. Cici smiled and stated, "You want more time?" He told her

he wanted more time and "Massagee." Cici stated "No more time, next time." Detective Fox asked her

again for a "Massagee" and Cici agreed to do the act the next time he came in. Detective Fox then left

the business.


24.     On October 18, 2011, APD conducted an undercover operation at the BEST CHINESE

MASSAGE /Coors location. APD Detective Sandy, in an undercover capacity, went in to the massage

parlor and had contact with a female who introduced herself as "Jennifer". Detective Sandy told Jennifer

that he wanted a one hour massage which he later paid for with his undercover credit card. While paying

for the massage, a female who identified herself as "Annie" walked into the lobby. The female who

identified herself as Jennifer asked Detective Sandy if he wanted to leave a tip on his credit card or pay

with cash. Annie engaged and requested that Detective Sandy leave a tip in cash. When Detective Sandy

agreed to do so, Annie escorted him into a room and instructed him to undress. Detective Sandy

removed his clothing, leaving his underwear on. Annie entered the room and began to massage his back.

She then rolled him over onto his back and began to massage his chest. At this point, Detective Sandy

asked Annie if he would perform a sexual act on him on $40.00. Annie put her index finger in front of

her mouth indicating for Detective Sandy to be quiet and told him to "lay back and enjoy 'Massagee.'"

Annie then grabbed his crotch area over his underwear. Detective Sandy stopped her by removing her

hand and at the same time giving a predetermined signal. A distraction was provided by law enforcement allowing Detective Sandy to excuse himself from the business prior to any additional activities. Detective Sandy then gave Annie forty dollars in cash and exited the business.

25.   On October 17, 2011, APD conducted an undercover operation at the BEST CHINESE MASSAGE /Wyoming location. APD Sergeant Peck, in an undercover capacity, went in to the massage parlor and had contact with an individual he described as an Asian female, mid to late 30s, approximately 5'7" and weighing approximately130 pounds. Sergeant Peck told the female he wanted a 30-minute massage and wanted to pay by credit card. The female ran the credit card transaction for the price of the massage and said he could also pay for the tip on a credit card after the massage. She then took him into a room where he disrobed down to his underwear. A female came into the room and started to give Sergeant Peck a massage. As she massaged his back, he made what he described as small talk with her. During this conversation, he discovered she was from China and went by the name "Cici". Cici eventually had Sergeant Peck roll over to his back and massaged his chest. As she was massaging, he pointed to his penis and asked her if she would give him a massage in that area. Detective Peck was still wearing underwear and gestured moving his hand back and forth imitating the act of masturbation. Cici smiled, giggled and continued to massage his chest. Cici then began to massage his legs and asked if he wanted a "Massagee." As she asked him, she gestured, waving her hand back and forth as if she was imitating masturbation. He said "yes" and she immediately attempted to pull his underwear off but Sergeant Peck stopped her. Sergeant Peck asked her how much he would have to pay. The conversation went back and forth until they agreed on $40. Cici then attempted to pull his underwear off again. Sergeant Peck stopped her with his hand and told her he did not want her to do it anymore and had to leave. Sergeant Peck dressed, went to the counter to pay Cici a cash tip of $20 and left the premises.

26.   On October 25, 2011, Special Agents from HSI obtained discarded documents from 7505 Treviso Court NE, Albuquerque, New Mexico, the residence of MICHAEL and JENNIFER LEE. A search of the

10

discarded documents revealed several connections to BEST CHINESE MASSAGE.  Documents located by the agents included:

1) More than 100 handwritten receipts for monetary amounts paid to individuals, including receipts in the name of Cici.  Some of these documents include Chinese writing which has not yet been interpreted;

2) Gift certificates from BCM;

3) Travel information related to individuals with Chinese names other than MICHAEL and JENNIFER LEE;

4) Handwritten information related to a travel agency in California and a bank account number;

5) A ledger page written in Chinese characters which interpreted by a Department of Homeland Security analyst of Chinese descent indicated the following titles for each column:  masseuse, customer names (represented actually as a number), type of massage, cash transaction amount before tax, cash transaction amount after tax, credit card amount before tax, credit card amount after tax; (during the execution of a subsequent search warrant at the LEE's home which is referenced in this affidavit, similar ledgers were found inside a safe attached to numerous bundles of U.S. currency).

6) A piece of paper that appears to be a money ledger indicating denominations and amounts;

7) Bank of America deposit slips for accounts ending in 4352;

8) A bank currency envelope from Sandia Area Federal Credit Union with the figure $5000.00 written on the envelope;

9) A receipt for the purchase of money orders totaling $899.06 dated June 27, 2011;

10) Utility bills addressed to MICHAEL LEE at 1510 Wyoming Boulevard NE, Suite A, Albuquerque, New Mexico (the address of BCM-Wyoming) and 3296 Coors Boulevard NE, Suite L, Albuquerque (the address of BCM/Coors). The bills listed service addresses as 3501

Atrisco Dr., NW, Albuquerque #1011, and 8509 Marquette NE #F, Albuquerque respectively.

In a subsequent surveillance conducted by HSI on Tuesday, October 25, 2011, at

approximately 2130 hours, agents observed three Asian females depart BCM/Wyoming and

travel to the above listed address on Marquette. The agent was not able to see if the females

actually entered Apartment #F, however, the females exited the vehicle and a short time later,

one of the females left alone in the vehicle. Your Affiant believes this apartment is used to

harbor workers from BCM/Wyoming. This was also later confirmed during the execution of

the search warrant at this location

27.     Based on training and experience, your Affiant is aware that persons involved in illegal activity

may document information relating to the crimes on paper, computers and/or on other forms of media.

Your Affiant is aware that items which establish or tend to establish possession, use, residence, presence

and/or occupancy are of the residence are generally located inside the residence.

28.     Based on training and experience and on information obtained from the discarded documents

obtained from MICHAEL and JENNIFER LEE's residence, your Affiant is aware that documents

relating to the business BCM, including documents related to bank and financial transactions were

originally located inside the residence.

29.     On October 26, 2011, HSI Special Agents assisted APD and RRPD with the execution of search

and arrest warrants at each of the three locations for BCM. Law Enforcement agents interviewed several

female employees at the businesses.

30.                                          **BCM/Coors:**

Subsequent interviews and developments pursuant to the execution of the search warrant:

   a.   APD obtained an arrest warrant for "Annie", identified as Yugin Zhang, for the act of prostitution

        as referenced earlier in this affidavit. Zhang stated that she did not have a massage license and

came to Albuquerque via train from Los Angeles, California, on a tourist/visitor visa in September 2011. HSI Special Agents confirmed on October 27, 2011, with the State Licensing Board that no massage license was on file for Yugin Zhang. She was met by two men at the train station and one female who identified herself as Jennifer. Zhang was transported to BCM/Coors upon her arrival. Zhang stated that she averages $100.00 per day with 60% of her earnings going to the LEE's. Zhang stated she was paid in cash every two weeks. Zhang stated that the money earned was kept in a drawer in the front of the business and she was not allowed to touch the money. She also stated she shared an apartment with two additional female employees and was within walking distance from the BCM/Coors location. Note: Mesa Ridge apartments, located at 3501 Atrisco, is within walking distance from BCM/Coors. Zhang advised that her roommates encouraged her to do "extra" and she would earn additional tips. Your Affiant believes that "extra" can be interpreted as sexual acts.

b.  Xuerong Liu, a female employee at this location was also interviewed. Liu stated that she came to Albuquerque from China in 2010. Liu stated that "Jennifer" is the owner of the business and that half of her earnings go to JENNIFER. Liu estimated that her share of the earnings averages between $700-1000.00 per month.

c.  A search of the business revealed several massage recliners in the common area of the lobby. Officer Knoell with the RRPD observed a jar of Vaseline in plain view on the end table. It is your Affiant's belief that Vaseline serves no legitimate purpose or role for therapeutic massage treatments and is used commonly as a sexual lubricant.  There were also several individual packets of an unknown type of gel on the table.

d.  APD Sergeant Peck advised that during a search of this location, several discarded tissues with a substance that appeared to be semen, were found discarded in trash cans located inside the rooms. The tissues were collected and sent to the lab for analysis.

13



Subsequent interviews and developments pursuant to the execution of the search warrant:

a.   During the execution of the warrant, a female identified as Nan Zhang stated that she was living in Los Angeles, California when she saw an online advertisement to work for the massage parlor in Albuquerque.  Upon calling the number listed in the advertisement, she spoke with JENNIFER. JENNIFER told Zhang they needed massage therapists and stated that she was willing to fly Zhang out to Albuquerque from Los Angeles to work.  (Credit card statements retrieved during the execution of the search warrant on the LEE's residence reflected a 10/4/2011 charge from Southwest Airlines for air travel between Albuquerque and Los Angeles for Zhang.)  Both Zhang and another female employee named Li Xia Wang both stated they were not licensed massage therapists but were aware of the requirement to be licensed in the state of New Mexico.  HSI conducted a check with the State licensing board and they were unable to find a massage license on file for Nan Zhang however, it is unknown at this time whether Li Xia Wang has a valid license.  During a search of the room occupied by Zhang, HSI Special Agent Tyler Hatch located a sexual toy, specifically a penis pump, on the top shelf in plain view.  Also found in this room were approximately ten condoms and a pregnancy test kit which were both located inside luggage claimed by Zhang.  Also located in this room was a feminine hygiene wash product which was on the ground underneath the massage table in plain view.  There were no other items surrounding the wash product.  Zhang stated that she arrived in Albuquerque approximately one week prior to the execution of the search warrant.  Your Affiant believes that ten condoms, a pregnancy test, and vaginal hygiene wash is indicative of on-going sexual activity.  Your Affiant also believes that considering the fact she recently arrived in Albuquerque and began working as an unlicensed massage therapist, that the sexual aids would not typically be used in a legitimate massage establishment.

Zhang also stated during the interview that she resided on the premises and was unaware she would have to reside at the business. Zhang also stated that she had not yet paid and did not know how much she was going to make.

b.  Agents interviewed Lie Xie Wang, an employee at the location. She stated she was paid every two weeks in cash and split her earnings in half with the LEE's. She declined to reveal her earnings. Wang advised she has worked at the business for 10 months. She also stated that if JENNIFER was there, that JENNIFER would take the money from the clients prior to the massage. Wang advised she would accept cash tips, but did not elaborate. Wang advised she was living on-site and was paying the LEE's $10.00 per day to live at the business. Wang advised she was paid in cash by MICHAEL LEE.

## 32.                                *BCM/Wyoming:*

a.  During the execution of the warrant at this location, JENNIFER LEE arrived at the location. JENNIFER advised she was "across the street eating lunch" and observed the police cars at the business. Agents Dindinger and Leatherwood spoke with LEE who advised she was not the owner of the business and did not have anything to do with the business. When questioned about the name MICHAEL LEE listed on the business license, she advised that was her husband. When asked about his location, JENNIFER stated that he was on vacation and she did not know his location. JENNIFER stated that MICHAEL LEE takes vacations often and she does not know where she goes. It should be noted that JENNIFER LEE arrived in the same vehicle (Mercedes bearing New Mexico license plate LYY888). This vehicle was the same vehicle observed at the BCM/Rio Rancho on October 12, 2011 during surveillance. It should also be noted that a female was the driver and sole occupant of that vehicle during this time. After the vehicle departed this location, it was followed to the BCM/Coors location.

15

b.  A search of the business revealed a black binder in the common area of the business. Inside the

binder were documents displaying common English phrases. At the back of the binder, a piece of

paper with Chinese writing was discovered. An interpreter assisting the agents translated the

document and stated it referenced Account #10012647O1212113901, mailing address of Shanghai

China, and a reference to the account being used for Visa fees.

33.        HSI Special Agents executed an I-9, Notice of Inspection, subpoena at BCM/Coors and

BCM/Wyoming requesting forthwith documents as it relates to the employees at these locations. HSI

Special Agents who executed the I-9 subpoena advised there were no I-9's on site for the employees.

Title 8 § 1324a(b), requires employers to verify the identify and employment eligibility of all

individuals hired in the United States after November 6, 1986. Employers are required by law to

maintain for inspection all original forms I-9 for all current employees. Immigration and Customs

Enforcement (ICE) enforces this law by providing notice of inspections to potential businesses to

request a list of all current employees. Businesses are required to prepare an original I-9 which has to be

completed within 3 days of hire. Section I is filled out by the employee, Sections 2 and 3 are filled out

by the employer. These documents must be retained by the employer and be available for inspection by

ICE. Your Affiant believes that due to the fact no records were maintained for the employees, this

appeared to be an attempt to conceal the facts that these individuals were employed and possibly

engaging in illegal activity.

34.  On October 26, 2011, HSI Special Agents executed a Federal search warrant at 7505 Treviso, Court

NE, Albuquerque, New Mexico, the residence MICHAEL and JENNIFER LEE. During a search of the

residence, HSI Special Agents located the following documents which directly and indirectly relate to

BCM:

16

**Bank of America personal checking account 004272083181 held in the name of MICHAEL LEE**

**and JIANPING ZHU**

35. During the search of the residence, a utility bill from the Public Utilities of New Mexico (PNM) was located at the residence. The bill was addressed to MICHAEL LEE at 1510 Wyoming Blvd NE, Suite A, (the location of BCM/Wyoming) in Albuquerque, New Mexico 87112. The bill listed a service address of 3501 Atrisco NW, #1011, Albuquerque, New Mexico. A carbon copy of check #1376 issued from the Bank of America account ending in 3181 was located on the desk inside the office (labeled during the search warrant as Room N). The check was written on October 1, 2011 in the amount of $33.89 and was addressed to PNM. Written in the memo section of the check were the numbers 115349383-0345885-5. This series of numbers corresponds with the account number listed on the above described utility bill.

36. During the execution of the warrant, a utility bill for New Mexico Gas Company was located on the desk inside the office (labeled during the search warrant as Room N). The bill was addressed to MICHAEL LEE at 3296 Coors Blvd NW, Suite L, (the location of BCM/Coors) in Albuquerque, New Mexico 87120. The bill listed a service address of 3501 Atrisco NW, #1011. A carbon copy of check #1377, dated October 1, 2011, in the amount of $19.69 was made out to NM Gas. Written in the memo section of the check were the numbers 115349383-0345885-5. This series of numbers corresponds with the account number listed on the above described utility bill.

**Bank of America, business checking account 439003274352, in the name of BEST CHINESE**

**MASSAGE**

37. During the execution of the search warrant at the residence, Agents located merchant transaction receipts. A review of these receipts indicates the transactions were for BCM/Coors and BCM/Wyoming

and were deposited into the above listed account. Also discovered during the execution of the search warrant at the residence was a business account housed in a three ring binder that was located in the office (labeled during the search warrant as Room N). A review of account activity from this account revealed several checks drawn and payable to MICHAEL LEE or JENNIFER LEE in amounts ranging from $5,000 to $19,000 between November 2010 and October 2011.

38.     Also found during the execution of the search warrant at the residence were the following documents:

a.   A Visa credit card statement in the name of MICHAEL LEE indicating the purchase of a Southwest Airlines ticket on October 4, 2011, from Los Angeles to Albuquerque for a passenger by the name of Nan Zhang. During the execution of the search warrant for BCM/Rio Rancho, Zhang was identified as one of the female employees working at the parlor there.

b.   A handout titled "Title 31, Currency Transaction Reports for Casinos" dated November 2009. Inside the handout were instructions on how to document transactions over $10,000 as well as the process of money laundering as it relates to casinos.

c.   Tax returns for MICHAEL and JENNIFER LEE for the year 2010. A review of the returns indicates the LEE's included a Schedule C (profit or loss from business), indicating the business as Best Chinese Massage. MICHAEL LEE was listed as a business owner showing an address of 1510 Wyoming, Suite A (the location of BCM/Wyoming) in Albuquerque, New Mexico. The gross receipts for 2010 were listed as $20,719.41. Business expenses listed on the Schedule C exceeded $35,000 resulting in a net loss of $14,297.31. During the execution of the search warrant at the residence, agents located a safe in the room labeled as "N" (the office). The safe was breached which revealed large amounts of U.S. currency was located inside the safe. The currency was bundled in various denominations with some stacks still containing the bank straps indicating the amount. Due to the large amount of currency discovered onsite and after a review of the significant financial transactions referenced in this affidavit, it appears the activity resulting

from the LEE's business endeavors are not consistent with the reported gross receipts listed on the tax returns.

d.  A receipt from Rental Management Services dated October 21, 2011, indicating rent payment in the amount of $1600.00 as it relates to BCM/Rio Rancho.

e.  A ledger dated April 1, 2010 through September 18, 2011, showing continuous profits starting from $1,800 increasing to $72,000 by September 2011. The additional characters on the ledger are in Chinese.

f.  Multiple stacks of currency were located inside the safe. Some of the stacks were individually wrapped within ledgers/receipts. These receipts appeared to be the same format as those discovered during the search of the discarded trash outside the residence. The items listed the ledgers including the following: customer name, duration of the service, type of service, cash or credit card, before and after tax amounts, date, tip amount, name of the masseuse. The currency discovered inside the safe totaled $145,419.00. Your Affiant believes that the amount of cash on hand particularly the stacks of currency wrapped in ledgers, contradicts the amount of earnings reflected on financial documents obtained during the search warrant.

g.  Cashier's check 1017715, drawn from Bank of America, dated May 9, 2011, to the order of Mesa Ridge Apartment community, and noted as application fee in the amount of $35.00. On October 25, 2011, agents discovered during surveillance at an apartment complex located at 3501 Atrisco, that females leaving the BCM/Coors location traveled to the apartment complex located at this address and entered Apartment #1011. The apartment complex is called Mesa Ridge. Agents obtained a copy of the lease agreement for apartment #1011. The rental application dated May 9, 2011, lists Michael Lee as the applicant.  Also obtained from the apartment office were copies of checks drawn off a Bank of America account #004272083181, in the name of MICHAEL LEE and JENNIFER Z. LEE. One such document provided was check #1363, dated August 1, 2011, in the amount of $668.62. The words "August #1011" were referenced in the memo section. There

were additional checks form the same account made out to Mesa Ridge in amounts ranging from $688.00 to $688.65 with indications of the numbers "1011" in the memo section.

h. A copy of an Immigration document (permanent resident alien card) for Zou Baolu. Note; the post search warrant interview at Best Chinese/Coors of a female employee named Xuerong Liu revealed that Balou was her husband who was now residing in Denver.

i. American Express credit card statements ending in account 2-41008, revealed monthly charges ranging from $2,000 to $5,000 and subsequent payment in full each month. This appears inconsistent coupled with the fact that tax returns for the LEE's discovered during a search of their residence reflected an adjusted gross income of only $35,536.32 for calendar year 2010.

39.   Interviews were conducted with business owners after the execution of the search warrant at the BCM/Coors location. Information gathered from those interviews leads your Affiant to believe that illegal sexual activity is taking place not only inside the business behind closed doors, but also outside the business due to the following information. Note: the persons who own/operate surrounding businesses stated the activity listed below takes place on a regular basis:

a. Asian females grabbing the crotch area of male subjects as they walked outside the business and prior to departing the area.

b. Asian females observed getting into cars in the parking lot and remaining in the car for periods of 15-60 minutes.

c. Asian females kissing various male subjects as they depart the business.

All of these activities were reported to take place in public view.

## CONCLUSION

40.     Your Affiant believes the contents of the bank accounts contain the proceeds of financial gain earned by employing Chinese nationals who are engaged in illegal activity (prostitution) who have entered into the country through tourist visas and have since gained status under asylum. Your Affiant also believes MICHAEL and JENNIFER LEE are paying the workers sub-standard wages in cash and take a house cut on each transaction. Your Affiant believes these accounts are subject to seizure because they are also used to promote Money Laundering as the accounts, activity in the accounts, and the co-mingling of funds has been identified. Your Affiant believes MICHAEL and JENNIFER LEE are depositing illicit proceeds into their accounts and therefore co-mingling the funds with any legitimate earnings.

41.     Based on the facts set forth herein, I believe there is probable cause to seize the accounts identified in paragraph 6 of this affidavit , because they contain proceeds from illegal activity and were used to facilitate illegal activity, specifically, the facilitation of prostitution, harboring, and inducement pursuant to violations of 18 U.S.C. §2422, Coercion and Enticement; and  8 U.S.C. §1328, Importation of Alien for Immoral Purposes and are therefore subject to forfeiture under 18 U.S.C. § 2428,  18 U.S.C. § 981 (a)(1)(C), 28 U.S.C. § 2461, 18 U.S.C. § 982, and/or 21 U.S.C. § 853.

42.     Your Affiant requests seizure of the contents in the above identified accounts because no other form of restraint, including a protective order, will ensure the property's availability for any possible forfeiture. I also believe that a lesser form of restraint would be of no value and might lead to the hiding of the funds.

43.     Your Affiant requests issuance of the warrant because:

1) There is probable cause to believe that the property to be seized would in the event of any future arrests and subsequent convictions, be subject to forfeiture and;

2) A protective order may not be sufficient to assure the availability of the property for forfeiture.

44.     Your Affiant requests that the Court in the warrant define the contents of the account as all principal, deposits, interest, dividends, and other amounts credited to the account on and after execution of the warrant, up to final liquidation of the account. Your Affiant further requests that the Court in the warrant authorize HSI to effect the seizure of the contents from the accounts, and in its discretion direct the financial institution at which the accounts are established, to do any of the following without further order of the Court:

a.   To freeze the contents of the accounts in place and to refuse the withdrawal of any amount from the accounts by anyone other than the HSI, and while any contents of the accounts are frozen in place to accrue any deposits, interest, dividends, and any other amount credited to the accounts until the HSI directs that the contents of the accounts be finally liquidated and no contents remain;

b.   To liquidate some or all of the contents of the accounts at one or more times and upon liquidation of any contents to turn over the liquidated amount to HSI.

45.     The United States seeks this authorization in order to maximize the value of the contents seized from the accounts considering that the accounts may be interest-bearing accounts, timed accounts, accounts to which a penalty for early withdrawal applies, or have some other aspect affecting their value. I have not included each and every fact known to the Affiant. Rather, this affidavit contains the facts this Affiant believes are necessary to establish probable cause to seize the funds. It is your Affiant's belief

that should these funds be disbursed to MICHAEL and JENNIFER LEE, they will become fungible

profits subject to rapid dissipation and used to further facilitate illegal activity.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT.

This affidavit was approved by AUSA Cynthia Weisman

_____
Michael Harman, Special Agent
Homeland Security Investigations

Subscribed and sworn before me this 27Th day of Oct. _____, 2011.

_____
United States Magistrate Judge

23